# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

LE VAN SON,

    Plaintiff,

v.                                                                               Case No: 5:18-cv-265-TPB-PRL

MARK S. INCH, in his official
capacity as the Secretary, Florida
Department of Corrections, and
JESS BALDRIDGE, in his official capacity
as the Warden of Sumter Correctional
Institution,[1]

    Defendants.
_____

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

### I. Status

Plaintiff, an inmate of the Florida penal system, initiated this action by filing a civil rights Complaint under 42 U.S.C. § 1983. (Doc. 8) He is proceeding on an Amended Complaint alleging that he was denied access to a Vietnamese translator in violation of his access to courts and equal protection rights under the First and Fourteenth Amendments. (Doc. 10) He sues Mark

---

[1] Under Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Court substituted Mark S. Inch for Julie Jones as the proper party Defendant as the Secretary of the FDOC, and Jess Baldridge for John DeBell as the proper party Defendant as the Warden of Sumter Correctional Institution. (Doc. 31 at 1 n.1)

S. Inch in his official capacity as the Secretary of the FDOC, and Jess Baldridge in his official capacity as the Warden of Sumter Correctional Institution. (*Id.* at 2) As relief, Plaintiff requests, *inter alia*, that the Court find Rule 33-501.301(3)(d) of the Florida Administrative Code unconstitutional, issue an order for the appointment of counsel to represent Plaintiff, and all other relief that this Court deems just and proper. (Doc. 10 at 5)

Before the Court is "Defendants' Motion for Final Summary Judgment and Memorandum of Law" (Doc. 41; Motion) with exhibits (Docs. 41-1 through 41-5; Motion Exs. A-E). Plaintiff filed a Response in opposition to the Motion. (Doc. 50; Response) Defendants' Motion is ripe for review.

## II. Factual Allegations and Procedural History

Plaintiff is a Vietnamese national with "limited aptitude in English." (Doc. 10 at 5) He is an inmate of the Florida penal system and thus subject to the Florida Department of Corrections (FDOC) policies and rules. At issue is Rule 33-501.301(3)(d), Florida Administrative Code, which provides: "Law libraries shall provide interpreters for any language other than English that is native to 5 percent or more of the statewide inmate population." In 2018, Plaintiff initiated this action arguing the Rule is unconstitutional, because it allows the FDOC to exclude interpreters for Vietnamese inmates who account for less than 5 percent of the inmate population. (Doc. 10 at 4)

According to Plaintiff, in 2011, while housed at Franklin Correctional Institution, he requested that the FDOC provide him with a Vietnamese translator to help him read his state court trial transcripts, but the FDOC refused. (*Id.* at 4) He then claimed that on December 12, 2017, while housed at Sumter Correctional Institution, he again requested but was denied a Vietnamese interpreter "to assist [him] in filing [a] postconviction motion and to interpre[t] trial transcript[s]." (*Id.* at 5) Plaintiff argued that being denied a translator violated his Fourteenth Amendment due process and equal protection rights "guaranteed [to] all other inmates being held in [the FDOC] who are provided with [an] interpreter to assist in filing postconviction motions and other legal pleading[s]." (*Id.* at 6) He also claimed that being denied a translator deprived him of his First Amendment right of access to the courts. (*Id.* at 5)

Defendants moved to dismiss (*see* Doc. 24), and the Court dismissed Plaintiff's access to courts claim and any claim premised on acts that occurred in 2011 (*see* Doc. 31 at 11-13). The Court denied Defendants' motion to dismiss to the extent they sought to dismiss Plaintiff's equal protection claim stemming from actions occurring after 2011. (*Id.*) Thus, Plaintiff's equal protection claim challenging the constitutionality of Rule 33-501.301(3)(d) is the only claim remaining. Defendants' instant Motion followed.

3

*i. Defendants' Motion*

Defendants argue that Plaintiff has failed to show that Rule 33-501.301(3)(d) violates the Equal Protection Clause. (Motion at 2) They contend that Plaintiff fails to demonstrate that Rule 33-501.301(3)(d) implicates a suspect class. (*Id.* at 6-10) Instead, they assert that "[t]he policy is based solely on language needs in the inmate population and does not discriminate against inmates based on race or national origin." (*Id.* at 15) To that end, they maintain that the Court need only evaluate the constitutionality of the Rule under the rational basis standard rather than strict scrutiny. (*Id.*) In applying that standard of review, Defendants contend that the intent of the FDOC's complete policy on law library access is to provide inmates with various services to meaningfully access the courts. (*Id.* at 11) (citing Motion Ex. D); *see generally* Fla. Admin. Code r. 33-501.301. The interpreter policy in Rule 33-501.301(3)(d) "is an attempt to provide additional services to promote access to the courts for non-English speaking inmates." (Motion at 11) Defendants contend that while the "the legislative purpose of the 5 percent classification in the law library policy was not articulated when the rule was developed"; "[t]he policy furthers the penological goal of" providing interpreters to prevalent language needs and "enhancing an inmate's ability to access the court, without placing an

4

unreasonable burden on DOC's resources to provide an interpreter for every inmate in every language." (*Id.* at 11-12)

Defendants also argue that Plaintiff fails to prove that purposeful discrimination was a motivating factor for the implementation of Rule 33-501.301(3)(d). (*Id.* at 13) According to Defendants, "when looking at the application of the policy, there is a clear absence of discriminatory purpose or intent based on race or national origin . . . ." (*Id.* at 14) In support of this argument, Defendants provide the Affidavit of Allen Dean Peterson, Law Library Administrator, who is responsible for providing library services to 67 institutional libraries within the FDOC. (Motion Ex. E at 1-4) Peterson's Affidavit provides the following in relevant part:

> I am familiar with Rule 33-501.301(3)(d) . . . . The rule provides interpreters to non-English speaking inmates if the language needed makes up 5 percent or more of the current statewide inmate population. I have researched Rule 33-501.301(3)(d) [ ] but was unable to locate any documentation regarding the purpose or intent of the policy's 5 percent classification.
>
> I have 20 years of experience regarding the practical application of this policy in DOC's institutions.
>
> The law library policy does not pay for professional interpreters to come into the facility to translate for non-English speaking inmates. The policy also does not pay for inmates to have their legal documents translated or transcribed from English to another language.

5

The law library policy essentially functions as an inmate to inmate assistance program. Generally, DOC staff or certified inmate law clerks, assist with law library interpreter requests. DOC does not contract or pay for a professional service provider for interpreter needs but rather identifies other inmates within DOC that can assist in the needed language. This is a volunteer-based system where inmates assist each other with their legal needs.

The policy may affect inmates differently based on the prevalence of their native language in the prison population. If a native language is uncommon in the inmate population, it is difficult to locate another inmate that can provide assistance because the language is uncommon.

Any disparate impact on groups of non-English speaking inmates is not intentional. The policy does not deny interpreter assistance to an inmate based on race or national origin. A denial is based upon the 5 percent rule and the prevalence of the language in the inmate population.

A prevalent language can be easily accommodated because an interpreter can be easily located and identified. An uncommon language is difficult to accommodate because other inmates or staff who can interpret become rare.

. . .

I have personal experience obtaining inmate to inmate interpreter assistance under the policy. I have assisted many inmates with obtaining interpreters in the Spanish language and a much smaller number in the Haitian Creole language. In my experience, it is relatively easy to obtain inmate to inmate assistance for Spanish and Haitian Creole inmates because their languages are prevalent in the prison population.

I have never been asked to locate a Vietnamese interpreter for an inmate and in my experience, that request would be difficult to accommodate because the language is not prevalent in the prison population.

I have personal experience attempting to accommodate inmates with interpreter requests when languages are uncommon. On one occasion, I attempted to obtain inmate to inmate assistance for a Korean inmate and was unsuccessful in obtaining inmate to inmate assistance for him. As a result, I personally located volunteers from a group of Korean businessmen participating in a program at the University of Florida to come into the facility and assist[] with translating between the inmate and assigned inmate law clerks.

Although I was able to assist the Korean speaking inmate with interpreters in this one situation, it did take several hours of time over the course of many days to locate a volunteer that would be willing to assist the Korean speaking inmate.

In my experience, it would be very difficult and burdensome to continually accommodate interpreter requests when another inmate or staff member cannot be identified for an uncommon language need.

Although the purpose of the 5 percent classification for interpreter services is unknown, the rule prevents DOC staff from having the burden of seeking out volunteer interpreters to assist in uncommon languages. It also relieves any financial obligation DOC may have to pay for private interpreters when volunteers cannot be found.

A non-English speaking inmate is free to seek out their own volunteer interpreter if their language is uncommon in the facility and help cannot be obtained.

(Motion Ex. E at 2-4) Defendants also provide the Affidavit of Lori Nolting, the FDOC's Operations and Management Consultant Manager. (Motion Ex. C) In her Affidavit, Nolting states the following:

> On December 8, 2017, there were a total of 96,498 inmates in the Department's custody and 49 of those inmates were born in Vietnam. On that same date, there were no inmates in custody that were classified as speaking Vietnamese as their primary language.
>
> As of August 14, 2020, there were a total of 85,240 inmates in the Department's custody and 48 of those inmates were born in Vietnam. On that same date, there were no inmates in custody that were classified as speaking Vietnamese as their primary language.

(Motion Ex. C at 2)

### ii. Plaintiff's Response

In his Response, Plaintiff argues that the Court should apply strict scrutiny to determine the constitutionality of the prison policy because the prison Rule (1) impedes a fundamental right and (2) explicitly implicates a suspect class. (Response at 2) Plaintiff also contends that his equal protection claim stems from allegations that Rule 33-501.301(3)(d) is unconstitutional on its face, and thus he need not show discriminatory purpose or intent. (*Id.* at 5) As to his fundamental right argument, Plaintiff argues that the policy impedes his ability to connect with other Vietnamese inmates who could help

8

him translate legal materials and ascertain postconviction claims, and thus, hinders his right to access of courts. (*Id.* at 8)

As to his suspect class argument, Plaintiff contends that the Rule's language-based classification implicates national origin. (*Id.* at 10) According to Plaintiff, and contrary to his earlier claim that the Rule is facially unconstitutional, Plaintiff contends the Rule's "classification is not based on 'language alone,' but rather, a combination of language plus the prevalence of that language resulting in disparate treatment between similarly situated English-deficient inmates." (*Id.* at 14)

In any event, according to Plaintiff, even if his claim is subject to the rational basis analysis, Defendants still would not be entitled to summary judgment because there is no legitimate governmental purpose served by the Rule's exclusionary impact. (*Id.* at 15)

### III. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute does not defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Only a genuine dispute of material fact precludes summary judgment. *Id.* at 249.

The moving party bears the initial burden of showing no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party discharges its burden, the nonmoving party must show the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If the parties' evidence conflicts, the nonmoving party's evidence is presumed true and all reasonable inferences are drawn in the nonmoving party's favor. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## IV. Analysis

The Equal Protection Clause requires the government to treat similarly situated individuals in a similar manner. *Gary v. City of Warner Robins*, 311 F.3d 1334, 1337 (11th Cir. 2002). "When legislation classifies persons in such a way that they receive different treatment under the law, the degree of scrutiny the court applies depends upon the basis for the classification." *Id.* "If a law treats individuals differently on the basis of race or another suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny." *Avera v. Airline Pilots Ass'n Intern.*, 436 F. App'x 969, 974 (11th Cir. 2011) (citing *Eide v. Sarasota Cnty.*, 908 F.2d 716, 722 (11th Cir. 1990)). Otherwise, the law need only be rationally related to a legitimate government purpose. *Id.*

Equal protection claims fall into three categories. *Maxi–Taxi of Fla., Inc. v. Lee Cnty. Port Auth.*, No. 2:07CV82, 2008 WL 1925088, at *6 (M.D. Fla. Apr. 29, 2008) (citing *E & T Realty v. Strickland*, 830 F.2d 1107 (11th Cir. 1987)). The first type of equal protection claim is "a claim that a statute discriminates on its face." *See E & T Realty*, 830 F.2d at 1112 n. 5. "The second type of claim is one in which the party alleges 'that the neutral application of a facially neutral statute has a disparate impact.'" *Maxi–Taxi*, 2008 WL 1925088, at *6. To prove a statute has a "disparate impact," the plaintiff must show "purposeful discrimination." *Id.* The third type of equal protection claim alleges that the government "unequally administers a facially neutral statute." *Id.* The plaintiff may succeed if he proves he has "been treated differently than others similarly situated and there is no rational basis for the disparate treatment." *Id.* at n. 8 (citations omitted).

Plaintiff first argues that his equal protection claim is subject to strict scrutiny because, on its face, the Rule impinges upon his fundamental right to access of courts and implicates a suspect class (i.e., national origin). As to his access to courts claim, as noted in its Order on Defendants' motion to dismiss (*see* Doc. 31 at 8-9 n.6), because Plaintiff has failed to allege all the elements of an independent access to courts claim, he has failed to show that the Rule hinders a fundamental right requiring strict scrutiny. *See Jackson v. State Bd. Of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (holding

that because plaintiff failed to allege an actual injury regarding his right to access to courts, he did not demonstrate the impediment of a fundamental right, and thus, his equal protection claim would not be evaluated under strict scrutiny).

As to his claim that the Rule implicates a suspect class, suspect classifications typically hinge on immutable characteristics determined solely by the incident of birth (i.e., race, national origin, sex). *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973); *Williams v. Pryor*, 240 F.3d 944, 947 (11th Cir. 2001); *Miccosukee Tribe of Indians of Fla. v. United States*, 722 F. Supp. 2d 1293 (S.D. Fla. 2010). The Administrative Rule that Plaintiff challenges here depends on the language Plaintiff speaks. *See Vega v. Jones*, No. 3:15cv407/MCR/EMT, 2016 WL 5019197, at *5-*6 (N.D. Fla. March 21, 2016) (finding that Fla. Admin. Code r. 33-501.301(3)(d) is based on language, not race of Spanish-speaking inmate, and thus, did not facially discriminate against a protected class), *report and recommendation adopted*, No. 3:15cv407/MCR/EMT, 2016 WL 5024212, at *1 (N.D. Fla. Sept. 16, 2016). While the Eleventh Circuit has noted in dicta that "to a person who speaks only one tongue or has difficulty using another language than the one spoken in his own home, language might well be an immutable characteristic like skin color, sex or place of birth"; *see Garcia v. Gloor*, 618 F.2d 264 (5th Cir.

1980)[2]; the Eleventh Circuit and "[t]he Supreme Court never h[ave] held that language may serve as a proxy for national origin for equal protection analysis." *Sandoval v. Hagan*, 197 F.3d 484, 511 n.26. (11th Cir. 1999) (recognizing its prior dicta in *Gloor*, but also acknowledging that language alone has never implicated a facial equal protection challenge and declining to make such a finding); *see also Portales v. Sch. Board of Broward Cty.*, No. 16-62935-CIV-MORENO, 2017 WL 4402534, at *2-*3 (S.D. Fla. Oct. 2, 2017) (noting that "[t]he Eleventh Circuit has not directly addressed whether the inability to speak a certain language, without more, is protected"; and thus, relying on other circuits that have decided the issue to find that language is not an immutable characteristic); *see also Moua v. City of Chico*, 324 F. Supp. 1132, 1137-38 (E.D. Cal. Apr. 9, 2004) (holding "no court has ever held that strict scrutiny is triggered by a municipality's decision not to provide interpreters for all non-English-speaking residents in the City's provision of services").

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former United States Court of Appeals for the Fifth Circuit that were rendered prior to the close of business on September 30, 1981.

Other circuits have directly held that language-based classifications are not the equivalent of national-origin-based classifications, and thus, statutes that limit services based on language do not, on their face, implicate a suspect class. *See Olagues v. Russonello*, 770 F.2d 791, 801 (8th Cir. 1985) (holding "language-based classification is not the equivalent of a national origin classification, and does not denote a suspect class"); *Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983) (holding Secretary's failure to provide forms and services in Spanish language does not facially discriminate based on suspect class because "[l]anguage, by itself, does not identify member of a suspect class"); *see also Gloor*, 618 F.2d at 268 ("Neither [Title VII] nor common understanding equates national origin with the language one chooses to speak"). Further, other district courts have held that language, by itself, does not implicate a suspect class. *See Santiago-Lebron*, 767 F. Supp. 2d at 1349; *Portales*, 2017 WL 4402534, at \*2-\*3; *Franklin v. District of Columbia*, 960 F. Supp. 394, 432 (D.D.C. 1997), *rev'd in part and vacated in part on other grounds*, 163 F.3d 625 (D.C. Cir. 1998) (finding language proficiency is not interchangeable with national origin or race).

Considering those cases to be instructive, the Court finds that Plaintiff fails to demonstrate that Rule 33-501.301(3)(d) implicates a suspect class so as to require strict scrutiny review. The Rule concerns only the language the inmate speaks and does not make any distinction based on national origin or

14

race. Indeed, being Vietnamese and having an inability to speak English are not analogous. Thus, for purposes of his equal protection claim, Plaintiff has failed to show he is a member of a suspect class, and thus, the Rule requires only rational basis review.

Plaintiff seems to recognize that his claim is subject to rational basis review and makes the alternative argument that there is no rational basis for the Rule because it serves no legitimate governmental purpose. (Response at 15) However, Defendants have submitted evidence that Rule 33-501.301(3)(d) relieves FDOC officials from the financial and time-consuming burden of seeking outside interpreters for rare and isolated languages. (Motion Ex. C at 4) Indeed, the purpose of the Rule is to facilitate an inmate's ability to consult with other inmates who may be able to translate material. It does not grant unfettered access to outside interpreters or mandate that the FDOC retain outside interpreters for even the most common of foreign languages. Further, nothing in the Rule prohibits an inmate from independently seeking outside help and if an inmate knows an interpreter, that inmate is free to contact that translator on their own. Instead, the Rule merely states that the FDOC is not solely responsible for providing that resource when the pool of qualified inmate translators for certain languages is so limited that it makes it nearly impossible. As such, Defendants articulate a conceivable rational basis for Rule 33-501.301(3)(d), because the Rule serves the most prisoners within the

15

reality of their limited resources and its classification on languages representing less than 5% of the population is not arbitrary or irrational.

Nevertheless, even assuming Plaintiff has shown that he is a member of a suspect class and Rule 33-501.301(3)(d) involves that suspect class, Plaintiff has failed to prove that the resulting discrimination by prison officials was intentional. *See, e.g.*, *Martinez v. Warden*, --- F. App'x ---, 2021 WL 912687, at *3, (11th Cir. Mar. 10, 2021) (finding that even if the plaintiff showed he was a member of a suspect class, the plaintiff failed to show that the prison library's absence of Spanish legal material stemmed from intentional discrimination). The record evidence shows that the lack of Vietnamese speaking inmate interpreters does not result from intentional discrimination, but from the unavailability of inmates who are fluent in English and Vietnamese.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1. Defendants' Motion for Final Summary Judgment and Memorandum of Law (Doc. 41) is **GRANTED**.

2. The Clerk is **DIRECTED** to enter judgment in favor of Defendants Inch and Baldridge and against Plaintiff and **CLOSE** the case.

**DONE AND ORDERED** at Tampa, Florida, this 8th day of June, 2021.

TOM BARBER
UNITED STATES DISTRICT JUDGE

Jax-7

C: Le Van Son, #373291
 Counsel of Record